28 N.J. Super. 515 (1953)
101 A.2d 72
HOMER C. ZINK, CHAIRMAN, STATE BOARD OF PAROLE, ET AL., RESPONDENTS,
v.
ELI LEAR, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 23, 1953.
Decided December 4, 1953.
*518 Before Judges CLAPP, GOLDMANN and EWART.
Mr. Eli Lear, pro se.
Mr. Eugene T. Urbaniak, Deputy Attorney-General for the State (Mr. Theodore D. Parsons, Attorney-General, attorney).
*519 The opinion of the court was delivered by GOLDMANN, J.A.D.
Lear appeals from a judgment of the Superior Court, Law Division, denying relief on an application made by him entitled "Writ of Mandamus." Appellant was sentenced in the Camden County Court in April 1946 on two charges of armed robbery to consecutive terms of 7 1/2 to 15 years in State Prison. Neither the application nor the judgment is printed in the record, but we shall consider the several points now urged: (1) "unequal and unusual punishment," (2) the ex post facto application of L. 1948, c. 84, the new Parole Act, and (3) "double jeopardy."
Under the first point of "unequal and unusual punishment" Lear complains that he has been and is unable to gain a reduction of his sentence through work time allowance because of the inequitable operation of the provisions of R.S. 30:4-92, which reads as follows:
"The inmates of all correctional and charitable, hospital, relief and training institutions within the jurisdiction of the state board shall be employed in such productive occupations as are consistent with their health, strength and mental capacity and shall receive such compensations therefor as the state board shall determine.
Compensation for inmates of correctional institutions may be in the form of cash or remission of time from sentence or both. Such remission from the time of sentence shall not exceed one day for each week of sentence, but remission granted under this section shall in no way affect deductions for good behavior or provided by law."
Specifically, he complains that although he is willing and in fact eager to work, and has in the past faithfully discharged such work assignments as have been given him, he has not been able to gain the full advantage of work time allowances under the statute. Presently, he says, it is possible for a prisoner who satisfactorily completes assigned duties to earn about 52 days off for each year of sentence, or one day for each week's work. Cf. R.S. 30:4-140. Lear claims that whenever, upon doctors' orders, he was required to remain in the prison hospital or to rest in his cell because of illness, he missed the equivalent number of days worked  in all about 50 days during his seven years of confinement  and *520 has thereby suffered a loss of ten days' work time allowance. He contends that the distinction between the physically able inmate and the one who suffers illness is discriminatory and metes out unequal and unusual punishment. The same argument applies to the situation claimed to exist at the State Prison where, because of alleged overcrowded conditions, there are not enough jobs for those who are willing to work. Lear claims that he has lost many days of work time allowance because he was not fully employed. Similarly, he claims he has lost work time because he could not work when supervisory personnel were ill, or because they were on vacation, or because of national holidays observed at the prison. In all, he says that he has been credited with only 250 days, instead of the approximately 364 days which he fully expected to "earn" if fully employed during the last seven years  a loss of 114 days. Lear seeks to enjoin the State Parole Board from withholding this "compensation" in the future and also prays that the board be directed to credit him with the days off that have so far been withheld.
The simple answer to this is that there is no authority under R.S. 30:4-92 for granting work time allowance to men who do not work, whether because of illness, unavailable work, vacations or otherwise  and this is conceded. The Legislature has not provided for granting work time credits to prisoners who are not actually engaged in productive occupations. The prison authorities can reduce a sentence only in the manner prescribed by statute. The prisoner alleges that the Legislature is fully aware of the present situation. He recognizes that it is for the Legislature, if it sees fit, to pass remedial legislation. It has not chosen to do so. As for Lear's assertion that he is entitled to more credit than he has received, we have no way of knowing the truth of the matter. The prison authorities will undoubtedly check the accuracy of his representation.
The argument made by Lear as to the ex post facto application of the new Parole Act (L. 1948, c. 84; N.J.S.A. 30:4-123.1 et seq.) runs as follows: The 1948 act creating the State Parole Board in the Department of Institutions *521 and Agencies provided in section 37 (N.J.S.A. 30:4-123.37) that any prisoner sentenced prior to the effective date of the act  as Lear was  "shall retain all rights of eligibility for parole available to him under any pre-existing law." Lear claims he has been deprived of these rights because: (a) prior to May 28, 1948, the effective date of the act, prison inmates had the right to appear before the then Board of Pardons every two years for parole consideration, whereas now, under a rule promulgated by the new Parole Board, it will hear inmates incarcerated before 1948 every two years upon petition only; (b) many prisoners were paroled by the Court of Pardons before their minimum sentence was served, or at minimum, but now the Parole Board cannot parole an inmate before the expiration of his minimum or one-third of his maximum term (N.J.S.A. 30:4-123.10); (c) the vote of the members of the board must be unanimous (N.J.S.A. 30:4-123.19), whereas the former Court of Pardons acted on a majority vote (R.S. 2:10-2); and, finally, (d) clemency at the hands of the Governor is no longer available; prior to the 1948 act the executive acted independently of the Court of Pardons, and although the Governor may still be appealed to for clemency he, in turn, asks the State Parole Board to review the case and make a recommendation; it is idle for a prisoner to expect the board, which has acted unfavorably in his case, to make an about-face and report favorably to the executive.
It should first be observed that Lear, by his own admission, is a third offender and subject to the laws applying to such a prisoner. His reference to not being eligible for consideration for release on parole until he has served his minimum or one-third of his fixed maximum sentence (L. 1948, c. 84, § 10, as amended by L. 1953, c. 277, § 1; N.J.S.A. 30:4-123.10), is inappropriate, since that section deals with first-time offenders. The applicable section of the statute is L. 1948, c. 84, § 12, as amended by L. 1953, c. 277, § 2 (N.J.S.A. 30:4-123.12), of which more hereafter.
The argument that the prisoner has been deprived of rights existing before the passage of the 1948 act is without *522 merit. Parole is an act of leniency or grace towards the prisoner, and a device for the protection of society through the rehabilitation of the offender. It is a subject strictly within the competence of the Legislature which, in providing a system of paroles, may fix the frame within which the State Parole Board shall act. Article V, Sec. II, par. 2 of the Constitution of 1947 declares that "A system for the granting of parole shall be provided by law." The Legislature, acting pursuant to this constitutional directive, adopted L. 1948, c. 84, and the amendments that followed thereafter.
The argument under (a) above, that the requirement of a petition to the Board before an inmate will be allowed to appear and be heard deprives Lear of a pre-existing right, is without merit. The requirement is merely procedural.
As for sub-argument (b), the Legislature could provide, and did, that consideration for release upon parole could not be given by the State Parole Board until a certain fixed period had elapsed. It is not for the courts to trespass upon the legislative domain.
As for sub-argument (c), it should be noted that the former Court of Pardons had no real authority to grant parole by its own fiat; it gave merely a sort of conditional executive clemency. If a prisoner was released on parole, it was only in a case where the Governor voted with the majority of the members of the court. R.S. 2:10-2, repealed by L. 1948, c. 83, § 9. The Legislature has now provided that the State Parole Board vote must be unanimous, and this requirement is completely within its competence.
Turning to sub-argument (d), executive clemency is still available to prisoners in all of its forms, L. 1948, c. 83, N.J.S. 2A:167-1 et seq., including commutation of sentence upon such terms, conditions and limitations as the Governor in his discretion may direct, L. 1948, c. 83, § 5, N.J.S. 2A:167-4. The Governor in his discretion may, prior to granting or denying the written application of the prisoner, refer the same to the Parole Board for investigation, and in such case the board is required to make a full investigation *523 and report thereon in writing to the Governor, with its recommendation. L. 1948, c. 83, § 8, N.J.S. 2A:167-7. The language of this section is permissive, and not mandatory, and where the Governor does ask the board to investigate and report, he is not bound, as Lear suggests, to follow its recommendation, be it favorable or unfavorable to the prisoner. Incidentally, the Constitution of 1947 (Art. V, Sec. II, par. 1) provides that a commission or other body may be established by law to aid and advise the Governor in the exercise of executive clemency. This has been done by the Legislature. L. 1948, c. 83, § 8 (N.J.S. 2A:167-7) and L. 1948, c. 84, § 33 (N.J.S.A. 30:4-123.33).
Finally, Lear argues that he has been subjected to "double jeopardy" because, confessedly being a third offender, he has by the provisions of L. 1948, c. 84, § 12, as amended by L. 1953, c. 277, § 2 (N.J.S.A. 30:4-123.12), been made "liable to a further punishment."
He admits having been correctly classified by the State Parole Board as a third offender. Under N.J.S.A. 30:4-123.12 a third offender is ineligible for parole consideration by the Board "until he shall have served at least three-fourths of the maximum sentence imposed upon him for such third offense less any time earned for diligent performance of work assignment; * * *."
(N.J.S.A. 30:4-123.12 now provides that the limitations of the section on the granting of parole shall not apply to prisoners convicted and sentenced as third offenders in the manner provided by N.J.S. 2A:85-9, which states that such a prisoner may be sentenced to State Prison for not more than three times the maximum period for which he might have been sentenced for the first offense. Clearly, Lear was not sentenced by the Camden County Court in 1946 under N.J.S. 2A:85-9, because the penalty for robbery was imprisonment for not exceeding 15 years (R.S. 2:166-1, now N.J.S. 2A:141-1), with a possible five years' imprisonment additional for being armed (R.S. 2:176-5, now N.J.S. 2A:151-5). The County Court sentence on each armed robbery charge was 7 1/2 to 15 years.)
*524 Lear argues that he will be eligible for parole consideration only after 22 1/2 years in prison  three-quarters of his aggregate sentence on the two consecutive terms; that it is not unreasonable to presume that had the 1948 legislation been in existence at the time of his sentence in 1946, the sentencing court would have lowered the maximum imposed, and accordingly he must now suffer a further penalty because of his criminal record of two previous high misdemeanors. This, in Lear's view, amounts to "double jeopardy" and an "ex post facto" application of the law. The argument as to what the sentencing court would have done is pure speculation. The short answer to Lear's contention is that R.S. 30:4-106.2, which was in effect at the time of the sentencing, provided that a third offender was not eligible for parole unless he served at least three-fourths of his maximum sentence. It should again be noted that resort may still be had to the Governor for executive clemency under L. 1948, c. 83, N.J.S. 2A:167-1 et seq.
Lear also argues that whereas he previously would have been entitled to commutation time for good behavior, L. 1948, c. 84, § 12, as amended but not changed by L. 1953, c. 277, § 2 (N.J.S.A. 30:4-123.12), deprives him of such time allowance and limits him to an allowance for diligent performance of work assignments only.
Essentially the same argument was made in White v. Parole Board, 17 N.J. Super. 580 (App. Div. 1952), where it was held to be without merit. The court held that the deprivation of remission of maximum sentence for good behavior did not enhance the sentence. The denial of commutation time to multiple offenders and the grant of it to prisoners not of that class was held to be solely a question of legislative discretion involving no question of due process.
Parole presents a question of statutory construction; no constitutional right is involved. Fleming v. Tate, 81 U.S. App. D.C. 205, 156 F.2d 848, 849 (D.C.C.A. 1946). Parole is a matter of legislative grace and not a thing of right. Mahoney v. Parole Board of New Jersey, 10 N.J. 269, 279 (1952), appeal dismissed 344 U.S. 871, *525 71 S.Ct. 173 (1952); Hiatt v. Compagna, 178 F.2d 42, 45 (C.C.A. 5 1949), affirmed 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639 (1950), rehearing denied 340 U.S. 907, 71 S.Ct. 277, 95 L.Ed. 656 (1950). Parole may be granted or withheld, as the legislative discretion may impel. When sentence is imposed upon a defendant, there is no constitutional guaranty that the provisions regarding parole will remain constant; the only constitutional inhibition is that no law may be passed increasing the punishment for the crime committed. People v. Hunt, 25 F. Supp. 647, 648 (D.C.N.Y. 1938). The changes effected by the 1948 Parole Act and its amendments imposed no new penalty nor did they increase the sentence for the crime. The act simply changed the procedure of administering parole and bears none of the elements requiring condemnation as abrogating the prisoner's constitutional rights.
The Legislature may affix such conditions and provide such administration in the field of parole as it will. Courts have no function except as the statutes give them power. The 1948 act, as amended, lodges discretion in the State Parole Board and is silent about court interference. Cf. Hiatt v. Compagna, above. Accord United States ex rel. Bongiorno v. Ragen, 146 F.2d 349 (C.C.A. 7 1945), cert. den. 325 U.S. 865, 65 S.Ct. 1194, 89 L.Ed. 1985 (1945); United States ex rel. Holderfield v. Ragen, 170 F.2d 189 (C.C.A. 7 1948), cert. den. 336 U.S. 906, 69 S.Ct. 485, 93 L.Ed. 1071 (1949); United States v. Sullivan, 55 F. Supp. 548 (D.C. Ill. 1944).
The matters raised on this appeal involve parole administration and do not present constitutional issues. The court has no authority to act in the premises. Cf. White v. Parole Board, 17 N.J. Super. 580 (App. Div. 1952); In re Fitzpatrick, 9 N.J. Super. 511 (Cty. Ct. 1950), affirmed 14 N.J. Super. 213 (App. Div. 1951).
Affirmed.