Harry SERIO, Plaintiff,

v.

Milton J. LISS, President of Local No. 478 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; and Local No. 478 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and James P. Mitchell, Secretary of Labor of the United States, Defendants.

Civil Action No. 944–60.

United States District Court
D. New Jersey.
Dec. 9, 1960.

2. See Battjes v. United States, 6 Cir., 1949, 172 F.2d 1, 4.

Parsonnet, Weitzman & Oransky, Newark, N. J., for plaintiff by Thomas L. Parsonnet, Newark, N. J.

Donald Legow, Newark, N. J., for defendants President and Local.

Chester A. Weidenburner, U. S. Atty., Newark, N. J., for defendant James P. Mitchell, Secretary.

WORTENDYKE, District Judge.

Plaintiff (Serio), a resident of this District, is an elected Business Agent of the defendant Local No. 478 (Local). De-

fendant Liss is President of Local, which is an unincorporated labor organization having its principal office in this District, and chartered by and a subordinate organization of the stated International. Serio's term of office as Business Agent will expire December 31, 1962. He receives a salary of $14,300.00 annually for his services in that office.

On October 5, 1953 Serio was convicted in an appropriate court of the State of New Jersey of the crime of atrocious assault and battery, and, on October 14, 1953 he was sentenced to a term of imprisonment of from two to three years to commence on the latter date. On March 30, 1955 Serio was paroled in accordance with N.J.S.A. 30:4–123.15, and was relieved of the conditions of his parole on December 30, 1955.

By letter of October 19, 1960 Liss, as President of the Local, was advised by an Assistant Attorney General of the United States that, by reason of Serio's conviction, his continuing to serve in his position as Business Agent of Local would constitute a violation of section 504 of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C.A. § 504). The letter reminded Liss that the statute forbade the Local and its officers from knowingly permitting any person "'to assume or hold any office or paid position in violation of'" the cited statutory section. By letter of its "House Counsel", dated October 27, 1960, the International to which the Local belonged directed the removal of Serio from his office on November 2, 1960, "unless the Court rules on that date that Brother Serio is entitled to serve as a business agent or unless the Department of Justice enters a formal stipulation that Brother Serio may continue to serve as the business agent pending the final decision of the Court."

On November 2, 1960, upon filing his verified complaint in this action for injunctive relief and a declaratory judgment respecting his right to continue in office, Serio sought and obtained an order, with temporary restraint, directing Liss and Local to show cause why they should not be enjoined from removing Serio from office or disturbing his tenure thereof. Prior to the adjourned return of that order, and upon due application therefor and with the consent of the parties, leave was granted to James P. Mitchell, Secretary of Labor of the United States of America, to intervene in this action.

Defendants having answered, admitting the allegations of the complaint, the cause came on to be heard on return of the order to show cause by way of cross-motions for summary judgment. These motions presented two questions: (1) Has this Court jurisdiction of this action? and (2) Is plaintiff entitled to continue to occupy his office as business agent of defendant Local?

No genuine issue of fact is presented.

■ The Court recognizes its duty to scrutinize, at the outset, the existence of the asserted jurisdiction. Ambassador East, Inc. v. Orsatti, Inc., 3 Cir., 1958, 257 F.2d 79. The complaint alleges that the action arises under 73 Stat. 519, P.L. 86–257 (The Labor-Management Reporting and Disclosure Act of 1959), 29 U.S.C.A. § 504. Plaintiff presumably invokes the provisions of 28 U.S.C.A. § 1331(a) in support of his contention that this Court has jurisdiction, although he does not expressly so plead. Neither does he refer to the provisions of 28 U.S.C.A. § 2201 et seq., as support for his prayer for a declaratory judgment. He does, however, contend that the action "arises under" the Labor-Management Reporting and Disclosure Act, and alleges that the matter in controversy exceeds the sum or value of $10,000. 28 U.S.C.A. § 1331(a). In support of this jurisdictional contention plaintiff attempts to distinguish the factually similar cases of Strauss v. International Brotherhood of Teamsters, etc. et al., D.C.E.D.Pa.1959, 179 F.Supp. 297, 299, and Jackson v. The Martin Company, D.C.Md.1960, 180 F.Supp. 475. In Strauss the plaintiff had been "employed" as a Business Agent of the Local, continuously from 1954, although he had been convicted of a serious crime in 1941, for which he served a term of imprisonment. He was placed on parole November 2,

1949. The "period of parole ended on February 11, 1956, when he had completed his full sentence." On November 20, 1959, Strauss was relieved of his position as Business Agent by the Local, at the direction of its International, which asserted that he was ineligible to occupy the position because less than five years had then expired since the termination of his parole. 29 U.S.C.A. § 504. In the action which he brought in the District Court, Strauss sought equitable relief including reinstatement and a declaratory judgment interpreting section 504 as applied to his case. Judge Clary dismissed the action on return of an order to show cause why an injunction should not issue, upon the ground that the Court was without jurisdiction over the subject matter of the action. His opinion held that the right for which the plaintiff sought protection "as against the defendant (International Brotherhood)" was "the right to be free from discharge as business agent of a labor union, when that discharge is based solely upon the union's honest misinterpretation of a new Federal law. The plaintiff was not elected to this position nor does it appear that the position necessarily required his being a member of the local union. As between the parties to this suit, this is at best a contractual right or a right of 'status'." The case further held that such a right was "enforceable, if at all, in the common law courts of the state in which the (employment) contract arose," and that there was nothing in the Federal Act indicative of "an intention by Congress to enter such an area." Because the Court found no Federal question involved, it rejected jurisdiction, and therefore did not reach the necessity of construing section 504 of the Act. Upon the jurisdictional question in Strauss, Judge Clary quotes from the opinion of Mr. Justice Cardozo in Gully v. First National Bank, 1936, 299 U.S. 109, at page 112, 57 S.Ct. 96, at page 97, 81 L. Ed. 70, as follows: " 'To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.' " In Gully no Federal Act was involved. The action was upon a contract which was enforceable under the law of the State of Mississippi. Although a Federal law relating to national banks underlay one of the questions presented, the action did not "arise under" that law because the "right" asserted was not "created" thereby. In support of the general principle stated in Gully, there is cited, inter alia, Starin v. City of New York, 1885, 115 U.S. 248, at page 257, 6 S.Ct. 28, at page 31, 29 L.Ed. 388, in the opinion in which we find the following elaboration of the principle: "The character of a case is determined by the questions involved. * * * If from the questions it appears that some title, right, privilege, or immunity, on which the recovery depends, will be defeated by one construction of * * * a law of the United States, or sustained by the opposite construction, the case will be one arising under the * * * laws of the United States, within the meaning of that term as used in the act * * *; otherwise not." Cited in support of the foregoing description is Cohens v. Commonwealth of Virginia, 1821, 6 Wheat. 264, 379, 5 L.Ed. 257. See also cases cited and discussed in M'Goon v. Northern Pacific Railway Co., D.C.N.D., 1913, 204 F. 998, at pages 1000–1001.

The Jackson case, supra, was an action for a declaratory judgment and for injunctive relief brought by a decertified elected Committeeman of a Local union who had been declared ineligible to hold his position by the Executive Board of the Local under § 504 of the Act. The plaintiff in that case sued both his business employer and his Local. As a result of his decertification by his Local he had lost his super-seniority in his employment, and this induced his discharge therefrom by the employer. Upon the issue of jurisdiction claimed to arise "(A) under 29 U.S.C.A. § 412, read in connection with 29 U.S.C.A. §§ 411(a)(5), 504 and 529; (B) under 28 U.S.C.A. § 1331; or (C) under 28 U.S.C.A. § 1337" [180 F.Supp. 478], Chief Judge Thomsen con-

cluded that his Court was without jurisdiction of the subject matter under any of those sections. In the Jackson case as in the case at bar, plaintiff was an officer of the Local union, as distinguished from an employee. He was required by the constitution of the International union to take the oath of office required of officers, and his election was provided for in the by-laws of the Local. Chief Judge Thomsen followed Judge Clary in holding that 29 U.S.C.A. §§ 411 to 415 (The Bill of Rights Subchapter), "deals with the union-member relationship, not with the union-officer or union-employee relationships." Chief Judge Thomsen incorporates in his opinion a quotation from Senator Kennedy's statement in the Senate debate on the conference report on the bill that " 'The so-called Bill of Rights Title also secures important procedural safeguards against improper disciplinary action against union members *as members* (emphasis mine). The Senate should note, however, that all the conferees agreed that this provision does not relate to suspension or removal from a union office.'" See Cong.Rec. 86th Cong. 1st Sess. p. 16,415. The opinion in the Jackson case also cited Gully, supra, in support of the Court's conclusion that 28 U.S.C.A. § 1331 did not confer jurisdiction because "no right or immunity created by the Constitution, by the Landrum-Griffin Act, or by any other law of the United States" was involved. With respect to 28 U.S.C.A. § 1337, also relied upon to confer jurisdiction in that case, the Court held that although the Landrum-Griffin Act regulates commerce, jurisdiction under § 1337 can only arise "when the plaintiff's cause of action was based upon some right or immunity created by some federal statute or Constitutional provision."

█ I have the greatest possible respect for the learning and ability of the respective writers of the opinions in Strauss and Jackson, but feel constrained to reject those decisions as compulsive of a denial of jurisdiction in the case before me. While plaintiff's right to become a candidate for and to be elected to the office which he holds presumably arise from the constitution and by-laws of the labor organization of which he is a member, his right to continue to occupy and his immunity from removal from that office depends upon the construction of section 504(a) of the Act. A justiciable controversy has arisen respecting plaintiff's right to occupy his office by reason of the construction placed upon the language of the statutory section by the Attorney General of the United States, which has been adopted by the defendant Secretary of Labor, and the consequent directive, from the International to the Local, that plaintiff be removed from his office. If the Secretary's construction of the Act is correct, then plaintiff has no right to occupy his office. If plaintiff's construction of the Act is to be accepted, he is entitled to continue to occupy his office for the balance of the term for which he was elected. In the present case, as in that of Hopkins v. Walker, 1916, 244 U.S. 486, 37 S.Ct. 711, 713, 61 L.Ed. 1270, the "statement of the plaintiff's cause of action, unaided by any anticipation or avoidance of defenses discloses that it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of a law of Congress." Therefore, I am forced to conclude that the complaint sets forth a cause of action arising under section 504 (a) of the Landrum-Griffin Act. Consequently I must, although with reluctance, disagree with the views of my brethren expressed in Strauss and Jackson. Accordingly, I recognize jurisdiction here and pass then to the meritorious issue which is to be found in the question whether the plaintiff is legally entitled to occupy the office of Business Agent of the defendant Local.

█ It is well-established by Federal, as well as by New Jersey law, that commencement of enlargement of custody by parole is *not* termination of imprisonment. In Anderson v. Corall, 1923, 263 U.S. 193, 44 S.Ct. 43, 44, 68 L.Ed. 247, the Supreme Court of the United States, through Mr. Justice Butler, pointed out that "[p]arole authorized by the statute

does not suspend service or operate to shorten the term. While on parole the convict is bound to remain in the legal custody and under the control of the warden until the expiration of the term, less allowance, if any, for good conduct. While this is an amelioration of punishment, it is in legal effect imprisonment." In commenting upon the nature of parole, the Court of Pardons of New Jersey, 1925, 97 N.J.Eq. 555, 129 A. 624, at page 631, quoted from the opinion of former Attorney General Edmund Wilson, rendered on April 23, 1912, in the following language: "When granted, it is certain that the prisoner is still in the legal custody and under the control of the state. It (parole) is designed primarily for the benefit of the prisoner. The parole may be revoked for cause, and the prisoner, while at large, is always under the surveillance by the officers of the state."

The status of a prisoner paroled under 18 U.S.C.A. § 4203 has been construed as being that of continuing in legal custody and control. Minder v. Assistant Director, etc., 6 Cir., 1955, 229 F.2d 432; United States ex rel. Rowe v. Nicholson, 4 Cir., 1935, 78 F.2d 468, certiorari denied 296 U.S. 573, 56 S.Ct. 118, 80 L.Ed. 405. In the latter case parole was equated to an extension of prison walls. Parole has been described by the New Jersey courts as an act of leniency or grace towards a prisoner and a device for protection of society through rehabilitation of an offender. Zink v. Lear, 1953, 28 N.J.Super. 515, 101 A.2d 72; State ex rel. Kincaid v. State Parole Board 1959, 53 N.J.Super. 526, 147 A.2d 817. Although physically a release from the narrow confines of the security institution, a parole is not a termination of imprisonment but rather an enlargement of the jail limits. It is, in substance, a conditional release from confinement, but not from supervision and control. If the prisoner violates the conditions of his parole, and is reconfined, he may not receive credit upon his sentence for the time spent on parole, but that is a penalty visited upon the prisoner for the violation of his parole and does not constitute a basis for the contention that the commencement of parole marks the termination of imprisonment.

In construing the Act under which this case arises we must look to the intent of Congress as expressed therein and to the decisions of Federal courts dealing with the terminology to be construed. The Landrum-Griffin Act is a further exercise by the Congress of its constitutional authority in the field of interstate commerce. At the very outset, 29 U.S.C.A. § 401(a), the Act itself sets forth a congressional finding that the public interest imposes upon the Federal Government responsibility for the protection of the right of employees " * * * to organize, choose their own representatives, bargain collectively, and otherwise engage in concerted activities for their mutual aid or protection; * * *." In subdivision (b) of the same section of the Act, Congress further expressly finds "from recent investigations in the labor and management fields, that there have been a number of instances of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct" requiring legislation to protect the rights and interests of employees and of the public generally "as they relate to the activities of labor organizations, employers, * * and their officers and representatives." In the final subdivision (c) of the same section, is the expression of the further congressional determination that the enactment of the statute is necessary "to eliminate or prevent improper practices on the part of labor organizations, employers, * * * and their officers and representatives which distort and defeat the policies of the Labor Management Relations Act, 1947, as amended, and the Railway Labor Act, as amended, and have the tendency or necessary effect of burdening or obstructing commerce" by certain specified means.

The Act constitutes Chapter 11 of Title 29 of the U.S.C.A. The foregoing statement of findings, purposes and policy, and the definition of terms, are to be

found in subchapter I of the Act. Subchapter II embodies a bill of rights of members of labor organizations, such as the defendant Local in the case at bar, and for the infringement of those rights, section 412 of that subchapter authorizes the Federal District Courts to entertain civil actions brought by those whose rights, so proclaimed, have been infringed. Subchapter III states the reporting requirements imposed upon labor organizations, and officers and employees and employers of the members thereof. For the enforcement of those requirements the Secretary of Labor is empowered by section 440 to invoke Federal District Court jurisdiction. The section which we are here called upon to construe forms a part of subchapter VI which provides safeguards for labor organizations, and in so doing disqualifies, *inter alia,* persons convicted of assault which inflicts grievous bodily injury from serving as (also *inter alia*) a business agent of any labor organization for a period of five years after the end of the imprisonment, if any, to which he may have been sentenced upon such conviction. Subdivision (b) of the same section (§ 504) imposes a penalty of fine or imprisonment, or both, for any violation of the section.

■ It seems obvious from the language of the Act that the Congress intended to exclude convicted criminals from elective office in labor organizations within a period of five years following the termination of the status of convict of any such persons. I am impelled to the conclusion that in adopting this "purification" period of five years, the Congress indicated an intent to assure that the previously convicted person had demonstrated, for at least that period, his ability to conduct himself in obedience to the criminal laws free of custody and of custodial supervision. While such person remains on parole such custodial supervision persists, and society continues to be confronted with the risk that the individual, by his own misconduct, might require remanding to security confinement. With this cloud hanging over him, the effectiveness and reliability, as well as the availability, of the candidate for the labor organization office would be one of uncertainty. Such a status would clearly be against the interest of the members of the labor organization, as well as of the public at large.

■■ Among the miscellaneous provisions of the Act, which are included in subchapter VII is the investiture, by § 521(a) of the Secretary of Labor with the power to make investigations to determine whether any person has violated or is about to violate any provision of the Act except subchapter II, which contains the so-called Bill of Rights. The Attorney General was, therefore, amply authorized to investigate (in behalf of the Secretary) the incumbency of the plaintiff in the office of business agent of the defendant Local and to express to that defendant his belief that the plaintiff was illegally occupying his office. It was this expression of belief communicated first to the International and through it to the Local, that raised the justiciable controversy for the resolution of which the plaintiff has, in my opinion appropriately, invoked the jurisdiction of this Court. I must, however, resolve that controversy in favor of the Secretary because I determine that less than five years have expired since the end of plaintiff's imprisonment pursuant to his aforesaid conviction, and that therefore he illegally occupies the office or position of Business Agent of the defendant Local.

An appropriate order may be presented in conformity with the views herein expressed.