# IN RE PAROLE APPLICATION OF THOMAS TRANTINO.

### Superior Court of New Jersey
### Appellate Division

Argued February 11, 1981—Decided February 27, 1981.

500

502

Before Judges MATTHEWS, KING and MORTON I. GREENBERG.

*Roger H. McGlynn* argued the cause for appellant-respondent New Jersey State Parole Board (*Lum, Biunno & Tompkins,* attorneys).

*Donald M. Friedman* argued the cause for respondent-appellant Thomas Trantino (*Friedman, Carney, Wilson & Gannon,* attorneys; *Roger A. Lowenstein* on the brief).

*James R. Zazzali* submitted a brief on behalf of *amicus curiae* New Jersey State Policemen's Benevolent Association (*Zazzali, Zazzali & Kroll,* attorneys).

*Harry G. Carroll* submitted a brief on behalf of *amicus curiae* Bergen County Police Chiefs' Association (*Donald R. Conway,* attorney).

*Peter R. Feehan* submitted a brief on behalf of *amicus curiae* the Voto family.

The opinion of the court was delivered by

MORTON I. GREENBERG, J. A. D.

These consolidated appeals have been generated by proceedings following the application of Thomas Trantino for parole from the New Jersey State Prison. In the early 1960's Trantino was indicted and convicted for murder of two police officers, Peter Voto and Gary Tedesco, in Bergen County. He was originally sentenced to death on February 28, 1964. Ultimately, however, his sentence was changed on January 17, 1972 to life imprisonment as a result of the decision of the Supreme Court in *State v. Funicello,* 60 *N.J.* 60 (1972), *cert.* den. 408 *U.S.* 942, 92 *S.Ct.* 2849, 33 *L.Ed.*2d 766 (1972), which terminated the death penalty in New Jersey under the law then existing.

Trantino became eligible for parole in 1979. He was given a hearing before the three-member Parole Board provided under the law at that time, but denied parole. See *N.J.S.A.* 30:4–123.-1. Another hearing was held in his case on March 4, 1980. Only two members of the board were present. The two members approved parole contingent upon Trantino being accepted to a New York parole plan. The notice of the hearing determination indicated that a written decision would follow and that it would "contain special parole conditions." Following this determination a full board of three members held a rehearing on April 1, 1980. The board then denied parole. It recognized, however, that the Parole Act of 1979, *N.J.S.A.* 30:4–123.45 et seq., would become effective on April 21, 1980. The new act provided for a seven-person board and established different standards for parole from those in the prior law. Compare *N.J.S.A.* 30:4–123.53 with *N.J.S.A.* 30:4–123.14. The old board scheduled a new hearing for June 1980 so that the new board could consider Trantino's case under the new standards.

A hearing was held on June 9, 1980 before a member of the new board acting as a hearing officer. That member recommended that Trantino be paroled. His recommendation was reviewed by a board panel on July 3, 1980. It ruled that Trantino be granted parole "effective no earlier than August 12, 1980." It further ordered that the "effective date of release on parole is subject to the approval of parole plan by the New Jersey State Parole Board, continuance of acceptable institutional conduct, and completion of special pre-parole conditions, if any noted below." The conditions referred to were as follows:

You will be paroled with the following Special Conditions: (1) The Board requests the judge with appropriate jurisdiction pursuant to § 15B of the new New Jersey Parole Law, to set an amount in restitution which you shall make to the survivors of the victims (police officers). Payment of such restitution is a Special Condition of your parole, and failure to make good faith effort to make such payment will result in the revocation of your parole; and (2) The Board is requesting intensive supervision for you initially, and thereafter, intensive supervision for you as it is deemed necessary by the District Parole Supervisor. The Board empowers the District Parole Supervisor to impose and discharge any additional Special Conditions which he may, from time to time, deem supportive to your parole.

The reference to "restitution" in the special conditions triggered the application of *N.J.S.A.* 30:4–123.59 b, a provision in the new Parole Act. That section reads as follows:

Each parolee shall agree, as evidenced by his signature to abide by specific conditions of parole established by the appropriate board panel which shall be enumerated in writing in a certificate of parole and shall be given to the parolee upon release. Such conditions shall include, among other things, a requirement that the parolee conduct himself in society in compliance with all laws and refrain from committing any crime, a requirement that the parolee obtain permission from his parole officer for any change in his residence, and a requirement that the parolee report at reasonable intervals to an assigned parole officer. In addition, based on prior history of the parolee, the member or board panel certifying parole release pursuant to section 11 may impose any other specific conditions of parole deemed reasonable in order to reduce the likelihood of recurrence of criminal behavior. Such special conditions may include, among other things, a requirement that the parolee make full or partial restitution, the amount of which restitution shall be set by the sentencing court upon request of the board.

On July 14, 1980 the chairman of the Parole Board addressed a letter to Judge Trautwein, assignment judge of Bergen County, to implement the decision of the board. The chairman

advised the judge that the board had determined to grant a parole to Trantino effective August 12, 1980 but that the board had decided that Trantino should make restitution as a condition of parole. He further pointed out that the quantum of restitution was to be set by the sentencing court. Accordingly, the chairman requested that a judge be assigned to set the amount. This letter came to the attention of Judge Galda who was acting assignment judge. Judge Galda, by letter of August 1, 1980, requested that no action be taken to release Trantino on August 12, 1980. He also raised various legal questions concerning the procedure to be followed. He indicated that a hearing would have to be scheduled on the matter and that he would endeavor to see that the hearing would be held not later than September 20, 1980, if possible. Trantino was not released on August 12, 1980 and indeed has never been paroled.

A hearing was held before Judge Trautwein on September 23 and 24, 1980. Counsel appeared at the hearing representing Trantino, the Parole Board, the families of the murdered officers, the Bergen County Prosecutor's office and certain *amici curiae*. Testimony was taken. Judge Trautwein reserved decision and then delivered an oral opinion on October 2, 1980. He ruled that it was impossible to set restitution in a case of intentional murder and that the Legislature had contemplated restitution to be used where the crime was economic in nature and payment could be made to the direct victim of the crime. He further indicated that since restitution could not be made, Trantino would have to continue to be confined. Judge Trautwein signed an order on October 8, 1980 which incorporated his oral decision by reference and provided that the decision not to set restitution was to be forwarded to the Parole Board for such further findings as it deemed necessary.

Further proceedings then ensued before the Parole Board. The chairman of the board wrote Trantino on October 8, 1979. He advised Trantino that the court's decision not to establish an amount of restitution had substantially changed the set of assumptions which underlay the board's previous decision to

approve his parole. Accordingly, the chairman indicated that the board had determined on October 8, 1980 to vacate the decision of July 3, 1980 which had established a release date no earlier than August 12, 1980. The chairman further advised Trantino that his case was being referred to the adult board panel for additional review.[1]

Ultimately another hearing was held before five members of the seven-person board on November 13, 1980. The other two members were disqualified in the case. A formal written decision was rendered December 1, 1980 by the board. The board voted three to two to parole Trantino no earlier than December 23, 1980. The two dissenting members opposed granting parole. The release was made subject to appropriate court action establishing an amount of restitution pursuant to *N.J.S.A.* 30:4–123.-59 b. The board said that the "effect of this decision is to deny release until the precondition is met. Should the Appellate Court determine that this precondition is inappropriate, the Board directs that a parole hearing on the issue of release be scheduled as soon as practicable." The significance of restitution in the parole process appeared unmistakenly in the opinion of the board:

> The Special Condition of restitution is not intended to mitigate the serious harm which was committed by this offense but rather is intended as a compelling reminder of the wrong which was done. As such, restitution is meant to reduce the likelihood that the applicant would resort to criminal behavior and to further assist in the rehabilitative process. This is a valuable tool established by the Legislature for the Board's use.

The proceedings described above have given rise to two appeals to this court. On November 20, 1980 the Parole Board appealed from Judge Trautwein's order of October 8, 1980 refusing to fix the amount of restitution. Thus, reference to the "Appellate Court" in the decision of December 1, 1980 was to that appeal. On December 17, 1980 Trantino appealed from

---

[1]The record before us does not include a transcript or minutes of the meeting of October 8, 1980 but we have no reason to doubt that the letter to Trantino accurately reflects the decision.

the decision of the Parole Board rendered on December 1, 1980. After filing the notice of appeal, Trantino sought emergent relief requesting that he be released pending disposition of the case. We heard oral argument on his application on December 24, 1980. After oral argument we refused to order him released but ordered the two appeals consolidated. We have accelerated the appeal and permitted briefs to be filed by *amici curiae.*

On these appeals Trantino contends that he is entitled to release pending determination of the amount of restitution; that the board is bound by the decision of Judge Trautwein refusing to set an amount for restitution; that the Parole Act of 1979 does not contemplate restitution in a homicide case and that if it did, it would be beyond the power of the Legislature to authorize restitution as a condition of parole. The Parole Board argues that Trantino is legally confined, that restitution is appropriate in this case, the amount can and should be determined and that there is no constitutional impediment to ordering restitution.

We have no doubt that the Parole Board may appeal the decision of Judge Trautwein declining to establish an amount for restitution. *N.J.S.A.* 30:4–123.59 b provides that a condition of parole may include a requirement that the parolee make full or partial restitution. The section then states that "the amount of restitution shall be set by the sentencing court upon request of the board." Thus, it is the court which sets the amount of restitution but it is the board which determines whether full, partial or no restitution shall be required. The board, as is clearly set forth in its decision of December 1, 1980, considers that in an appropriate case restitution is a significant tool to reduce the likelihood that a parolee will resort to criminal behavior and assists in his rehabilitation. *N.J.S.A.* 30:4 123.53 provides that an adult inmate shall be released on parole at the time of parole eligibility unless information supplied or developed pursuant to *N.J.S.A.* 30:4–123.54 and *N.J.S.A.* 30:4–123.55 indicates that there is a substantial likelihood that the inmate

will commit a crime under the laws of this State if released on parole. The report supplied to the board must include an investigation of the inmate's parole plans. *N.J.S.A.* 30:4–123.54. The inmate's plans may and probably should include reference to how he intends to satisfy a condition of parole requiring restitution. Hence if the amount of restitution is not fixed, the board cannot make a complete review of the plan. Further, if the court refuses to set an amount for restitution, it makes it impossible for the board to require that the inmate make full or partial restitution and accordingly deprives the board of a valuable tool in determining whether to parole an inmate. Even if the board paroles the inmate, if it cannot require restitution it is deprived of a control on his conduct that may be needed to insure law abiding conduct after release. We must therefore regard the board as aggrieved by the decision of Judge Trautwein. It thus has a sufficient interest to prosecute its appeal. *See Crescent Park Tenants Ass'n v. Realty Equities Corp.,* 58 *N.J.* 98 (1971).

Trantino makes the technical argument that Judge Trautwein acted as the agent of the board and that since he failed to set an amount of restitution its remedy was to bring an action in lieu of the prerogative writ of *mandamus* against him. *R.* 4:69–1. But we see no technical impediment to the board's standing to appeal. Certainly, litigation between state officials is not unknown. *See, e. g., New Jersey Sports & Expo. Auth. v. McCrane,* 61 *N.J.* 1 (1972), app. dism. 409 *U.S.* 943, 93 *S.Ct.* 270, 34 *L.Ed.*2d 215 (1972); *Wilentz v. Hendrickson,* 135 *N.J. Eq.* 244 (E. & A. 1944). Further, the State may and does appeal decisions of the Public Employment Relations Commission, a state agency. *See In re Local 195 v. State,* 176 *N.J.Super.* 85 (App.Div.1980). We think that it would be hypertechnical to suggest that the Parole Board is bound by the decision of Judge Trautwein which directly opposes the wishes of the board. This is particularly so here where there are adverse contentions concerning the propriety of restitution being set presented on this appeal.

The suggested in lieu action would be singularly inappropriate. In such a case a second trial judge would be called upon either to agree or disagree with Judge Trautwein's decision. In effect, the judge would be sitting in an appellate capacity in the Superior Court, Law Division. Without question, the decision in the in lieu action would be appealable to this court. Since the matter is already here, there is no reason not to decide this appeal. A requirement that a second case be brought would directly contravene our policy against parceling out aspects of a single controversy to different courts. *See Eleuteri v. Richman*, 26 *N.J.* 506, 510 (1958), *cert.* den. *sub nom. Eleuteri v. Furman*, 358 *U.S.* 843, 79 *S.Ct.* 52, 3 *L.Ed.2d* 77 (1958). The parties have also raised the question as to whether Judge Trautwein acted as a statutory agent of the board. The point is without significance. Decisions of judges of the Law Division, whether made in a purely judicial capacity or as statutory agents, are appealable here. *R.* 2:2–3(a).

We also point out that the propriety of restitution as a condition of parole is, in any event, properly before us because Trantino has challenged it in his appeal from the Parole Board's decision of December 1, 1980. Therefore we will entertain the board's appeal on the merits.

It is perfectly evident that Trantino is not entitled to be released at this time. It has long been our law that the Parole Board may establish conditions of parole. *State v. Lavelle*, 54 *N.J.* 315 (1969). *N.J.S.A.* 30:4–123.59 b requires that a parolee must agree in writing to abide by specific conditions of parole which shall be enumerated in writing in a certificate of parole to be given to the parolee upon release. Obviously, a parolee cannot agree to pay an amount of restitution which has not been set. Further, we do not see how the payment of restitution can be isolated from other conditions which are imposed. For example, the conditions might require that a parolee live and work in a given place. Such a requirement could impact on his ability to make restitution. We also note

that the rules adopted by the board clearly require that all conditions of parole be established before release. *N.J.A.C.* 10A:71–6.3 provides that when the certificate of parole is delivered ·it shall contain "all the general and special conditions of parole imposed prior to release" and that "at the time of such delivery all parole conditions shall be explained to the inmate." A condition not yet established cannot be explained.

Certainly Trantino should not have considered either the Parole Board decision of July 3, 1980 or of December 1, 1980 as authorizing his release before restitution was set. The decision of July 3, 1980 was effective no earlier than August 12, 1980 and was made subject to approval of a parole plan before release. The decision of December 1, 1980 expressly recited that the amount of restitution be established before he was released.[2]

The wisdom of requiring that the amount of restitution be established before the inmate is released is plainly illustrated by the history of this case. Here the Parole Board ordered Trantino's release but contemplated imposition of a condition, restitution, that it considered of great significance to assure that Trantino conformed to proper behavior following release. If the board had known that the condition could not be imposed, it is quite possible that it would not have ordered his release. It may well have concluded that without the condition there was a substantial likelihood that Trantino would commit a future crime. See *N.J.S.A.* 30:4–123.53.

In addition to Trantino not being entitled to release as a substantive matter there may be procedural reasons why he cannot assert a right to release on any basis except a challenge to the December 1, 1980 decision. Though Trantino argues that he should not have been held beyond August 12, 1980, his notice of appeal is only from the decision of December 1, 1980. Fur-

---

[2]Trantino has objected to the letter of Judge Galda dated August 1, 1980. He has indicated that he was unlawfully held beyond August 12, 1980. We do not agree. Regardless of that letter, the board should not have released Trantino since the condition had not been set.

ther, in that notice he asserts that he is entitled to a calendar preference under *R.* 1:2–5 because he "is subject to continued incarceration beyond December 23, 1980 due to an illegal condition of parole." We also note that Trantino has not appealed the decision of October 8, 1980 vacating the parole order of July 3, 1980. Thus Trantino may not have preserved his right to assert that by reason of any decision prior to December 1, 1980 he should be released. We have nevertheless considered all his contentions on their merits.

Trantino argues that application of the principles of *res judicata* compel that he be released. He asserts that the Parole Board decision of April 1, 1980 recognized that he was fully rehabilitated but nevertheless rejected his parole application for punitive considerations. He then reasons that under the Parole Act of 1979 which became effective on April 21, 1980 he is entitled to release because the prior recognition that he had been rehabilitated showed that there was no substantial likelihood that he would commit a crime if released. He points out that the decision of April 1, 1980 did not mention restitution and that it was first imposed on July 3, 1980 as a condition of parole. He further argues that the decision of December 1, 1980 should, by reason of the binding effect of the decision of July 3, 1980, have resulted in his release. He notes that the chairman of the Parole Board in his letter of October 8, 1980 stated that Judge Trautwein's decision not to establish an amount of restitution changed the set of assumptions underlying the July 3, 1980 decision and that accordingly the matter would have to be reconsidered. He then argues that no new facts concerning his parole situation were discovered and that accordingly there was, at most, a mistake of law by the board which did not justify a change of the July 3, 1980 decision.

We conclude that the determination of April 1, 1980 did not reflect a finding that Trantino had been rehabilitated. On March 3, 1979 the board rejected Trantino's application because his parole "would depreciate the seriousness of your offense." The board also noted that Trantino's institutional adjustment

was not good. In view of both of these factors parole was denied. In 1980 when the board reconsidered the matter it made no finding that Trantino was rehabilitated. It simply said that although he had received "positive institutional reports for the past two years of the 17 years served on this life sentence, this does not mitigate against the especially aggravated circumstances of this offense. In light of the above factors, the Board has determined that the punitive aspect of this sentence has not been satisfied." In fact, the board did not determine that Trantino had been rehabilitated. It had no need to make that determination as it was denying parole for punitive reasons.

In these circumstances the decision of April 1, 1980 is of no assistance to Trantino. Undoubtedly in a proper case the principle of res judicata does apply in administrative proceedings, but not always to the extent it would apply in a court. Hackensack v. Winner, 82 N.J. 1, 31–33 (1980); Trap Rock Industries, Inc. v. Sagner, 133 N.J.Super. 99, 108–109 (App.Div. 1975), aff'd 69 N.J. 599 (1976). With respect to the decision of April 1, 1980 the principle which Trantino advances is collateral estoppel rather than res judicata. See Mazzilli v. Accident & Cas. Ins. Co., 26 N.J. 307 (1958). Certainly Trantino does not rely on the ultimate determination which was to deny parole. But the distinction between res judicata and collateral estoppel makes no difference in this case. Neither the ultimate determination, whether he was to be paroled, nor the specific fact which he seeks to have concluded by that decision, whether he was rehabilitated, was decided in his favor. Thus the April 1, 1980 decision does not assist him. See Gareeb v. Weinstein, 161 N.J.Super. 1, 13–14 (App.Div.1978); Bowers v. American Bridge Co., 43 N.J.Super. 48 (App.Div.1956), aff'd o.b. 24 N.J. 390 (1957).

Trantino points out that not until the decision of July 3, 1980 was restitution made a condition of parole or mentioned by the parole board. This is true, but we fail to see its significance. Of course, the board did not set any conditions of parole before that time. The two decisions which it made prior thereto had

rejected his application for parole. We can perceive no reason for the board to have set conditions for a parole which it was not granting.

Plainly, the decision of July 3, 1980, if deemed binding in December 1980, cannot be of assistance to Trantino. The July 3, 1980 decision was that he be granted parole, but only on the condition that he make restitution. If the July order had been deemed binding on the board in December, it would have again granted parole on condition that he make restitution. That is exactly what it did. While we do not suggest that the board predicated its December decision on the basis of *res judicata* or collateral estoppel, it would have decided the matter the same if it had.

The final substantive issue which we must reach is whether restitution should have been fixed by Judge Trautwein in this case. Since the decision of December 1, 1980 from which Trantino appeals requires that the court set the amount of restitution, this is a critical point. The board has ordered that if restitution is not set, parole should be deemed denied and another hearing should thereafter be held on the issue of release as soon as practicable.

There are procedural hurdles to overcome before either the board's or Trantino's appeal may be considered on this point. The decision of July 3, 1980 required that restitution be fixed by the court. The hearing that Judge Trautwein conducted was to implement that decision. But the board on October 8, 1980 vacated its action of July 3, 1980. Consequently, in a technical sense the appeal from Judge Trautwein's order has become moot. Even if we reversed Judge Trautwein, Trantino could hardly be paroled on the basis of a vacated order. Nevertheless, the controversy is ongoing and real since the same issue has been raised under the decision of December 1, 1980. In the circumstances it is both proper and appropriate that we consider the board's appeal from Judge Trautwein's order. *See Cain v. New Jersey State Parole Bd.*, 78 *N.J.* 253 (1978).

The problem with Trantino's appeal is that it may not be from a final decision. The determination of the board was contingent upon the court fixing the amount of restitution. If the court had set the amount, the board would have then been obliged to determine whether to order restitution at all and, if so, full or partial. *N.J.S.A.* 30:4–123.59 b. Insofar as we can ascertain from the record, the trial judge was never requested after the decision of December 1, 1980 to set the amount of restitution. In at least a theoretical sense it is possible that the judge would have set restitution and that the board would have then been required to make a further determination in Trantino's case. Thus, it is difficult to see how the decision of December 1, 1980 may be regarded as a final judgment since the matter may not be final as to all issues. *See Hudson v. Hudson*, 36 *N.J.* 549, 552–553 (1962). We also note that there is another reason why the decision of December 1, 1980 may not be final. The board directed that if this court determined that restitution was inappropriate, another hearing be held on Trantino's release as soon as practicable. If that hearing is considered as a continuation of the same proceeding, we doubt that the decision of December 1, 1980 should be regarded as a final decision.

Notwithstanding these technical problems we should and will hear Trantino's appeal on the merits. To require that the board again request the court to set restitution is to require a useless act. *See Collins Realty Co. v. Sale*, 104 *N.J.Eq.* 138, 140 (E. & A. 1928). In view of the prior determination by Judge Trautwein it is clear that another request to set the amount of restitution would have resulted in another refusal. If the board then reheard the matter, it would be compelled to grant or deny parole with no appellate determination that it could or could not require restitution. In order to obviate any procedural problems we treat Trantino's notice of appeal as a motion for leave to appeal which we grant *nunc pro tunc* as of December 17, 1980. *See Delbridge v. Jann Holding Co.*, 164 *N.J.Super.* 506 (App.Div. 1978); *R.* 2:2–3(b); *R.* 2:4–4(b)(2).

Judge Trautwein refused to set an amount of restitution for the following reasons. He noted that *N.J.S.A.* 30:4-123.59 b was written in terms of restitution, not reparation. Thus the section contemplated a return of what was taken from the victims. He further felt that the statute required that the restitution be made only to the victim of the crime and not to some third party since payment to a third party would dilute the rehabilitative aspect of restitution. He also thought it impossible to make restitution in view of the facts of this case.

We agree that an amount of restitution should not have been fixed in this case. The question is purely a matter of legislative intent. Parole is an unusual function in that the Legislature is obliged by our Constitution to provide for it. *N.J.Const.* (1947), Art. V, § II, par. 2. Accordingly, "the Legislature may affix such conditions and provide such administration in the field of parole as it will." *Zink v. Lear*, 28 *N.J.Super.* 515, 525 (App.Div.1953). *See, also, Greenholtz v. Nebraska Penal Inmates*, 442 *U.S.* 1, 7, 99 *S.Ct.* 2100, 2103, 60 *L.Ed.*2d 668, 675 (1979).

The history of our parole and probation statutes makes it clear that restitution could not be set in this case. The Legislature between 1978 and 1980 made great changes in our statutes with respect to definitions of and punishment for crimes and lesser offenses and with respect to parole of persons incarcerated. The New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1-1 *et seq.*, and the Parole Act of 1979, *N.J.S.A.* 30:4-123.45 *et seq.*, respectively became effective on September 1, 1979 and April 21, 1980. The Parole Act was adopted partially as a complement to the Code. The Code in many instances provided for more certain and longer sentences than had prior law. The Parole Act generally liberalized the granting of parole. These comprehensive statutes replaced prior statutes covering the same fields. Included in the New Jersey Code of Criminal Justice are provisions permitting trial judges to place defendants on probation. *N.J.S.A.* 2C:45-1. This section supersedes *N.J.S.A.* 2A:168-2.

*N.J.S.A.* 2A:168–2 provided that the court, as a condition of probation, could require a defendant to "make reparation or restitution to the aggrieved parties for the damage or loss caused by the offense." But the new code provides that a condition of probation may require a defendant "to make restitution of the fruits of his offense, in an amount he can afford to pay, for the loss or damage caused thereby." *N.J.S.A.* 2C:45–1 b(8).

The distinction between *N.J.S.A.* 2A:168–2 and *N.J.S.A.* 2C:45–1 b(8) is clear and without question is reflective of a legislative intent to make a substantive change in the law with respect to conditions that are specifically authorized to be attached to an order for probation. The Supreme Court in 1976 rendered two decisions with which the Legislature was certainly familiar when it modified the language of the probation laws.[3] *State in the Interest of D.G.W.,* 70 *N.J.* 488 (1976); *State v. Harris,* 70 *N.J.* 586 (1976). *State in the Interest of D.G.W.* was a juvenile case. The court there held that as a condition of probation a juvenile could be required, after appropriate proceedings, to pay for damages he caused to certain property. The power to do so was derived from both statutes and court rule. The case to some degree involved damages caused by destruction of property and thus the juvenile had to that extent gained nothing at the victim's expense. A portion of the damages was apparently for theft of personal property and thus a matter of profit to the juvenile. In reaching its decision on a statutory basis the court relied upon both the juvenile law, *N.J.S.A.* 2A:4–61 c, which authorized the trial court to impose conditions of probation, and the general probation statutes, *N.J.S.A.* 2A:168–1 and *N.J.S.A.* 2A:168–2. The case is significant for our purposes because the court recognized that there was a distinction between reparation and restitution. It said:

---

[3]The Legislature is assumed to be thoroughly conversant with its own statutes and the judicial construction placed thereon. *Quaremba v. Allan,* 67 *N.J.* 1, 14 (1975).

> It is apparent that the legislative purpose would accommodate reparation or restitution (for brevity we shall hereafter include both concepts within the term "restitution") as a probation condition. [70 *N.J.* at 497].

The court did not further distinguish between the two concepts as it was not necessary to do so since under the statutes and court rule, *R.* 5:9–9, both could be required as a condition of probation.

In *State v. Harris,* a welfare fraud case, the court explained what the difference was between restitution and reparation. It cited *State in the Interest of D.G.W.* announcing:

> As we have recently held in *State in the Interest of D.G.W.,* 70 *N.J.* 488 (1976), the significance of restitution as a condition of probation thus extends beyond the concept of simple justice to one aggrieved and entitled to restitution of that unlawfully taken or reparation for loss unlawfully inflicted. [70 *N.J.* at 592].

Thus *State v. Harris* and *State in the Interest of D.G.W.* make plain that *N.J.S.A.* 2A:168–2 dealt with two different but related concepts when it authorized the court to require restitution or reparation as a condition of probation. Certainly a payment by Trantino would be reparation and not restitution. He took nothing unlawfully which he can restore.

When the New Jersey Code of Criminal Justice was adopted the Legislature very much narrowed the specific statutory authority previously granted in *N.J.S.A.* 2A:168–2 to impose restitution or reparations as a condition of probation. *N.J.S.A.* 2C:45–1 b(8) does not authorize reparations to be required as a condition of probation. As we have noted, it empowers the sentencing court to require a defendant as a condition of probation "to make restitution of the fruits of his offense, in an amount he can afford to pay, for the loss or damage caused thereby." [4] Certainly, a payment by Trantino

---

[4] We do not imply that reparations may not be ordered as a condition of probation by reason of other powers. *State in the Interest of D.G.W.* was not decided solely on the basis of *N.J.S.A.* 2A:168–2. Authority to order reparations may exist in a juvenile case under *N.J.S.A.* 2A:4–61 and *R.* 5:9–9(b)(2)(C). *See State in the Interest of D.G.W., supra,* 70 *N.J.* at 496–497. Further it is possible that under the general power of the court to impose

would not be authorized by *N.J.S.A.* 2C:45–1 b(8) if that section were applicable to his case. There were no "fruits" from the murders. It is thus quite clear that the Legislature has intentionally narrowed its specific grant of power to the sentencing court in imposing conditions of probation in adult cases.

Against this background the parole statutes must be considered. Prior to the adoption of the Parole Act of 1979, *N.J.S.A.* 30:4–123.6 provided that an inmate as a condition of parole could be required to "make restitution for his crime." This provision was adopted in 1948. *L.* 1948, *c.* 84, § 6. We are aware of no case deciding whether restitution under that section could include the concept of reparations. Clearly, however, *N.J.S.A.* 30:4–123.6, at least in form, stood in contrast to *N.J.S.A.* 2A:168–2 which did permit reparations to be required as a condition of probation. There is a logic in allowing reparations as a condition of probation but not parole. When conditions of parole are established, the Parole Board may be acting many years after the crime. Witnesses may be unavailable. Obviously, a determination of an amount of reparations can be a difficult matter. But if reparations are established at the time of sentencing, the events will much more likely be fresh and the witnesses available. Thus the sentencing court will be better able to make an informed decision as to an appropriate amount of reparations than either it or the Parole Board could make years later. Thus we think the difference between *N.J.S.A.* 2A:168–2 and *N.J.S.A.* 30:4–123.6 was intentional and that only restitution and not reparations was authorized by *N.J.S.A.* 30:4–123.6.

---

conditions reasonably related to the rehabilitation of a defendant a sentencing court may order reparations when imposing sentence under the New Jersey Code of Criminal Justice. *See State v. Bausch,* 83 *N.J.* 425, 433 (1980). Obviously, these questions are beyond the scope of the issues before us. We are only concerned with the specific powers as an indication of legislative intent. No one can suggest that Judge Trautwein could have exercised a general power to set the amount of restitution or reparations on the basis of authority other than *N.J.S.A.* 30:4–123.59 b.

If there was any doubt under *N.J.S.A.* 30:4–123.6, surely there is none under *N.J.S.A.* 30:4–123.59 b. In *State in the Interest of D.G.W.* and *State v. Harris*, rendered prior to the adoption of the Parole Act of 1979, the Supreme Court made plain that there is a distinction between restitution and reparations. Nevertheless, when the Parole Act, including *N.J.S.A.* 30:4–123.59 b, was adopted it authorized only restitution. Further, it authorized only restitution at a time when the Legislature was narrowing the conditions that the sentencing court was specifically authorized to impose when awarding probation by eliminating the right of the court to require reparations. We find it inconceivable that the Legislature would permit the Parole Board to order full or partial reparations as a condition of parole for a crime committed years before while at the same time deleting this specific power to the original sentencing court when granting probation. Thus we agree with Judge Trautwein that he should not have set the amount of restitution.

We have reached our decision on the basis of the clear mandates of our statutes. We are aware that there has been considerable litigation in other states over the related issue of restitution or reparations as a condition of probation. See Annotation, "Propriety of condition of probation which requires defendant convicted of crime of violence to make reparation to injured victim," 79 *A.L.R.*3d 976 (1977). But cases from other jurisdictions are not dispositive of the issues before us. One case, however, cited by Judge Trautwein should be noted, *State v. Stalheim*, 275 *Or.* 683, 552 *P.*2d 829 (Sup.Ct.1976). That case was an appeal from an order of probation which required that a defendant, convicted of criminally negligent homicide, pay $2,500 restitution to a man whose wife and daughter were killed in an accident. The person to whom payment was to be made was not involved in the collision. The payment was to compensate him for the loss of his family. The Oregon statute provided that the sentencing court could order reparation or restitution to be made "to the aggrieved party" as a condition of probation. The Supreme Court of Oregon construed restitution to mean the

return of something wrongfully obtained by the defendant. It indicated that reparation was a broader term which, in the context of the statute, meant "liquidated or easily measurable damages resulting from the charged offense." 275 *Or.* at 687, 552 *P.2d* at 832. The Supreme Court of Oregon held that the trial court had improperly ordered restitution because it was not being made to the victim and was not for a readily measurable loss. 275 *Or.* at 689, 552 *P.2d* at 833.

Aside from the fact that we deal with parole and not probation, there are obvious differences between our situation and that facing the court in *State v. Stalheim.* The Oregon statute required that payment be made to the "aggrieved party." *N.J.S.A.* 30:4-123.59 b does not indicate who must be the recipient of the restitution. It might be appropriate, in the event that the victim of a crime of profit had died when the perpetrator was being paroled, to require that restitution be made to the victim's estate. We do not think that such payments would necessarily lose their rehabilitative impact. But the case is significant to us as it reflects the unwillingness of the Oregon court to construe its statute broadly, though it stated that:

> It must be admitted that the statute is drawn in general terms and is, therefore, susceptible to the broad interpretation urged by the state by which the court would be permitted to allow restitution or reparation in any reasonable amount which would be conducive to the defendant's rehabilitation consistent with the protection of the interests of the public. [275 *Or.* at 686, 552 *P.2d* at 831].

It also is significant as it defined restitution and reparation consistently with *State v. Harris, supra,* 70 *N.J.* at 592. We think we should take the same approach to the construction of *N.J.S.A.* 30:4–123.59 b as the Oregon court did with its statute and not read it over-broadly. We also agree with its definition of restitution.

 Trantino has raised constitutional challenges to the order of the Parole Board requiring him to make restitution. Since the board did not have the power to make such an order, these issues are moot.

On the basis of the decision we have reached we make the following disposition of these appeals. We affirm the judgment of Judge Trautwein of October 8, 1980 refusing to set the amount of restitution. We reverse the decision of the Parole Board of December 1, 1980 which imposed as a condition of parole that Trantino make restitution. We affirm the decision of the board that Trantino not be paroled at this time if restitution could not be ordered, and we affirm the decision of the board that another hearing be held on whether Trantino should be paroled. We remand the matter to the Parole Board for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.